UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF NEW YORK; KATHY HOCHUL, Governor of New York, in her official capacity; LETITIA JAMES, Attorney General of New York, in her official capacity,

Defendants.

Case No. 1:26-cv-01360-MAD-ML

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.    The United States is Likely to Succeed on the Merits of its Claims ...................................... 1

   A. The Face Covering and Identification Acts Regulate the Federal Government................... 1

   B. The Termination Act Violates Intergovernmental Immunity Principles ........................... 9

   C. The Termination Act Violates the Contract Clause.......................................................... 11

   D. The Termination Act is Obstacle Preempted ...................................................................... 12

II.   The United States Faces Irreparable Harm Absent Preliminary Relief ................................. 13

III.  The Balance of Equities and the Public Interest Weigh in the United States' Favor ............ 15

CONCLUSION.................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Blackburn v. United States*,
100 F.3d 1426 (9th Cir. 1996)..................................................................................... 2

*City of El Cenizo v. Texas*,
890 F.3d 164 (5th Cir. 2018)..................................................................................... 13

*City of New York v. United States*,
179 F.3d 29 (2d Cir. 1999)....................................................................................... 12

*Conn. State Police Union v. Rovella*,
494 F. Supp. 3d 210 (D. Conn. 2020) ...................................................................... 14

*Conn. State Police Union v. Rovella*,
36 F.4th 54 (2d Cir. 2022)........................................................................................ 14

*CoreCivic, Inc. v. Governor of N.J.*,
145 F.4th 315 (3d Cir. 2025)............................................................................. 4, 9, 10

*Crosby v Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ................................................................................................. 13

*DHS v. Texas*,
144 S. Ct. 715 (2024) ................................................................................................. 3

*Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*,
459 U.S. 400 (1983) ................................................................................................. 12

*Equip. Mfrs. Inst. v. Janklow*,
300 F.3d 842 (8th Cir. 2002)..................................................................................... 12

*Geo Grp. v. Newsom*,
50 F.4th 745 (9th Cir. 2022)....................................................................................... 4

*Johnson v. Maryland*,
254 U.S. 51 (1920) ................................................................................................... 4, 9

*Mayo v. United States*,
319 U.S. 441 (1943) ................................................................................................... 2

*McCulloch v. Maryland*,
17 U.S. (4 Wheat) 316 (1819)..................................................................................... 2

*Millennium Pipeline Co., L.L.C. v. Seggos*,

288 F. Supp. 3d 530 (N.D.N.Y. 2017) ........................................................................ 15

*New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*,
     491 U.S. 350 (1989) ............................................................................................... 14

*New York v. Tanella*,
     374 F.3d 141 (2d Cir. 2004).................................................................................... 8

*Rowe v. N.H. Motor Transp. Ass'n*,
     552 U.S. 364 (2008) ............................................................................................... 6

*Steffel v. Thompson*,
     415 U.S. 452 (1974) ............................................................................................... 14

*Sveen v. Melin*,
     584 U.S. 811 (2018) ............................................................................................... 11

*Texas v. DHS*,
     123 F.4th 186 (5th Cir. 2024)................................................................................. 3

*Trump v. Boyle*,
     145 S. Ct. 2653 (2025) ........................................................................................... 3

*United States v. California*,
     173 F.4th 1060 (9th Cir. 2026)....................................................................... *passim*

*United States v. City of Arcata*,
     629 F.3d 986 (9th Cir. 2010).............................................................................. 7, 8

*United States v. City of Philadelphia*,
     __F.Supp.3d__, 2026 WL 1906075 (E.D. Penn. July 2, 2026)................... 2, 7, 8, 14

*United States v. Fresno Cnty.*,
     429 U.S. 452 (1977) ............................................................................................... 15

*United States v. King Cnty.*,
     122 F.4th 740 (9th Cir. 2024)................................................................................. 10

*United States v. New York*,
     810 F. Supp. 3d 329 (N.D.N.Y. 2025) ................................................................... 3

*United States v. New York*,
     No. 26-104 (2d Cir.)............................................................................................... 4

*United States v. Virginia*,
     __F.Supp.3d__, 2026 WL 1909995 (E.D. Va. July 2, 2026)....................... 2, 3, 7, 14

*United States v. Washington*,

596 U.S. 832 (2022) ......................................................................................... 2, 10

*United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*,
842 F.3d 201 (3d Cir. 2016) ................................................................................. 12

*Willis Re Inc. v. Herriott*,
550 F. Supp. 3d 68 (S.D.N.Y. 2021) ........................................................................ 11

**Constitutions**

N.Y. Const. art. XIII ............................................................................................. 13

**Statutes**

8 C.F.R. § 287.8(c)(2) ............................................................................................ 7

8 U.S.C. § 1357(g) ............................................................................................... 12

8 U.S.C. § 1357(g)(1) ........................................................................................... 13

8 U.S.C. § 1357(g)(8) ........................................................................................... 13

N.Y. General Municipal Law § 119-n(c) ................................................................. 10

N.Y. General Municipal Law § 119-o ..................................................................... 11

N.Y. Civ. R. Law § 100(2)(c) ................................................................................... 4

N.Y. Civ. R. Law § 101 ....................................................................................... 3, 5

N.Y. Civ. R. Law § 102 ....................................................................................... 3, 5

N.Y. Crim. P. Law § 2.15 ....................................................................................... 4

N.Y. Exec. Law § 170-k(2) ................................................................................... 10

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .... 13

**INTRODUCTION**

New York asks this Court to ignore the decisions of every court to decide the face covering and identification issues presented by this case, and to ignore established Supremacy Clause precedent applicable to the INA 287(g) agreements. ECF 34 at 15 ("Opp."). The Ninth Circuit and district courts in Virginia and Pennsylvania have held that nearly identical laws were likely unconstitutional. This Court should decline New York's invitation to threaten a circuit split and enjoin Defendants from enforcing the Face Covering Act, Identification Act, and Termination Act (collectively, the "Challenged Acts") because the United States is likely to succeed on the merits of its claim that they impermissibly regulate the Federal Government.

New York refuses to disavow its intent to enforce the Challenged Acts against federal officers. That makes the relief sought here more urgent. The Face Covering and Identification Acts require federal officers to risk their safety and operational effectiveness or else face potential state criminal prosecution. This sets up a clash between state and federal officers. The Termination Act will end 287(g) agreements in the State and lead to more high-risk immigration operations, resulting in greater risk to federal officers during immigration operations. Complaint, ECF 1 ("Compl."), ¶¶ 53, 55. The Challenged Acts are unconstitutional, and therefore public interests and equities clearly favor Plaintiff. Accordingly, the United States is entitled to preliminary relief.

**ARGUMENT**

**I. The United States is Likely to Succeed on the Merits of its Claims**

**A. The Face Covering and Identification Acts Regulate the Federal Government**

**1.** New York erroneously claims that the unanimous Ninth Circuit decision granting a preliminary injunction against a California law nearly identical to the Identification Act was "minimally reasoned" and created a new rule unsupported by "any precedent." Opp. at 15; *see generally United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026). *California* is

1

thoroughly reasoned, relies on binding authority, and is on all fours with this case.

*First*, *California* did not announce a new rule but instead relied on binding authority. *Id.* at 1068 ("intergovernmental immunity … forbids States from regulating the Federal Government *qua* government and from controlling federal governmental functions in any manner and to any degree.") (*citing*, *inter alia*, *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996), which in turn cites *McCulloch v. Maryland,* 17 U.S. (4 Wheat) 316 (1819)); *California*, 173 F.4th at 1068 (citing *United States v. Washington*, 596 U.S. 832, 837 (2022)). There is nothing novel about the Supremacy Clause's bar against States directly regulating the federal government. *Second*, the Ninth Circuit did not make its decision in "a single paragraph, without analysis," Opp. at 15; it is pages long explaining the doctrine and its application. *California*, 173 F.4th at 1066-68. A lengthy opinion is not necessary where the challenged law is so clearly invalid.

Regardless, the weight of authority favors Plaintiff. Other courts conducting their own analysis have struck down nearly identical laws to the Face Covering and Identification Acts. *See United States v. Virginia*, __ F.Supp.3d __, 2026 WL 1909995 (E.D. Va. July 2, 2026) (*Virginia*) (issuing preliminary injunction against identification law) and, *United States v. City of Philadelphia*, __ F.Supp.3d __, 2026 WL 1906075 (E.D. Penn. July 2, 2026) (*Philadelphia*) (issuing preliminary injunction against identification and face covering laws).

Fundamentally, courts have rejected the arguments New York advances, reasoning that "if a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations." *California*, 173 F.4th at 1067. New York's argument runs afoul of a core principle of our constitutional system: "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*,

319 U.S. 441, 445 (1943).

**2.**      Defendants rely on *Texas v. Department of Homeland Security*, 123 F.4th 186, 205 (5th Cir. 2024), to argue that their laws "at most only incidentally burden[]" federal operations.[1] Opp. at 10, 15. Courts have roundly rejected that very same argument. *See California*, 173 F.4th at 1068; *Virginia*, 2026 WL 1909995 at *11. A state law that pertains to law enforcement officers is not a generally applicable law. *Compare California*, 173 F.4th at 1068 *with* N.Y. Civ. R. Law §§ 101, 102 (provisions pertaining to law enforcement officers). *Any* direct regulation of the federal government, even if coextensive with federal regulations, is unconstitutional. *California*, 173 F.4th at 1068.

Moreover, *Texas* is distinguishable because "Texas' suit did not seek to control any activity in furtherance of federal law enforcement activity[.]" *Virginia*, 2026 WL 1909995 at *10. There, Texas sued to prevent the "Border Patrol officers cut[ting] the wire to allow the passage of migrants, not to conduct border enforcement." *Id.* The Fifth Circuit found Texas was "acting as a proprietor, not a regulator" and specifically held that Texas did "not seek to control how Border Patrol agents carry out their duties" because the Texas law was a "generally applicable state law[]" that applies equally to private citizens. *Texas*, 123 F.4th at 205-07. "Here, in contrast, ordinary citizens are not allowed to engage in law enforcement activities. So, the state law here 'does not regulate conduct that any ordinary citizen could perform.'" *Virginia*, 2026 WL 1909995 at *11. The Challenged Acts are not generally applicable nor is New York acting as a proprietor of its own property, but rather a regulator of federal agents.

Defendants rely, Opp. at 16, on *United States v. New York*, 810 F.Supp.3d 329, 352

---

[1] *Texas* was wrongly decided. The Supreme Court vacated a previous injunction in that case the only time the issues were presented to that Court. *See DHS v. Texas,* 144 S. Ct. 715 (2024). Such interim orders "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

(N.D.N.Y. 2025),[2] where this Court held that "[t]he crux of the inquiry, however, is whether the state law directly regulates the federal government." *Id*. But this case is a clear example of direct regulation because the Face Covering and Identification Acts dictate what uniforms and equipment federal officers wear and expose them to criminal liability.

Defendants claim they can regulate "'the mode of carrying out federal duties' and incidentally burden federal conduct," Opp. at 10, citing *Geo Grp. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) and *CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 327 (3d Cir. 2025). But those cases were about federal contractors, which have immunity that is "substantially *narrower* than that of a federal *employee* or other federal instrumentality." *Newsom*, 50 F.4th at 755 (en banc) (emphasis added) ("interfering with the federal government's hiring decisions goes too far— regardless of whether the decision is to hire an employee or a private contractor.") The Face Covering and Identification Acts do not regulate federal contractors; however, they directly criminalize the action of "any federal law enforcement officer[.]" N.Y. Civ. R. Law § 100(2)(c) (citing N.Y. Crim. P. Law § 2.15). That is precisely what the Constitution forbids. New York's argument would collapse the distinction between federal contractors and employees on which the very cases it cites relied.

While the United States does not believe states can regulate federal officers at all, at most, states may pass laws that (1) are general, such as murder or trespass, that apply to private parties too *and* (2) do not regulate a core government function. In *Johnson v. Maryland*, a state law requiring driver's licenses ran afoul of intergovernmental immunity as applied to U.S. Postal Service workers even though it was a general law applicable to private citizens because it required state licensing for postal workers to perform their core duties. 254 U.S. 51, 57 (1920). The Face

---

[2] The United States has appealed that decision. *United States v. New York*, No. 26-104 (2d Cir.).

Covering and Identification Acts fail on both fronts.

*First*, the Face Covering and Identification Acts are not generally applicable laws. They do not apply to private citizens, only "law enforcement officers" including federal officers. N.Y. Civ. R. Law §§ 101, 102. New York cannot claim its laws are general because they apply to state and federal law enforcement officers alike. Otherwise, it would collapse the regulation analysis with the distinct discrimination analysis. Unlike traffic or murder laws which are applicable to everyone, the Acts apply only to law enforcement officers. *Second*, New York's laws facially regulate the core federal function of immigration enforcement. A law that "applies exclusively to law enforcement agencies and their officers, including federal law enforcement agencies and federal law enforcement officers" that "directly regulates conduct reserved to sovereigns" "is barred by intergovernmental immunity[.]" *California*, 173 F. 4th at 1068.

The Face Covering and Identification Acts are much more impactful than mere incidental effects. State restrictions on facial coverings and identification requirements pose serious safety and operational concerns for federal law enforcement officers, including jeopardizing operations, doxxing of officers, and chilling of law enforcement efforts. *See generally*, ECF 4-5 ("Hargis Decl."). The Acts will impede federal officers' ability to conduct undercover investigations and surveillance, and can lead to the flight of dangerous subjects, placing officers and the public at risk. *Id*. ¶ 17. Officers merely executing their federal duties will continue to face an unmitigated risk of threats and violence by nefarious members of the public, along with their families. *Id.* ¶ 6.

New York also argues any regulation is incidental because it does not stop federal officers from arresting and otherwise enforcing federal law. Opp. at 2. That focus is far too narrow. By New York's logic, it could require officers to wear masks, dictate what weapons are used, micromanage the training of K-9s, and require ICE agents to wear pink all under the threat of

prosecution because none of those laws would "prohibit federal officials from carrying out their duties in arresting or detaining individuals[.]" *Id.* This absurd result has no basis in law.

This is why, absent an injunction, other states are more likely to join New York in its attempt to micromanage a federal function. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008) (allowing a State to act unconstitutionally "would allow other States to do the same"). Indeed, multiple states have introduced similar legislation, and without Court intervention, this unconstitutional practice will proliferate.[3]

**3.**    Defendants are wrong that there is no conflict between federal and state requirements for face coverings and identification. Opp. at 10. This is not a preemption claim, so it is irrelevant whether federal law requires masking. Regardless, federal law and policies empower agencies and officers to use discretion to determine when to present identification and when to use face coverings, whereas the New York laws strip away that discretion. *See California*, 173 F.4th at 1067. That some officers do not use masks in some enforcement operations is irrelevant because the point of federal law and policy is that officers or agencies have discretion to decide when masking is or is not required as with identification. *Compare* Opp. at 11 *with* 173 F.4th at 1067. It is not for New York to decide whether the Federal Government's discretionary decisions are "necessary and proper" because federal law and policy already provide federal officers or agencies with the discretion to make decisions about masking and display of identification.

New York contends that "ample authorities" "cast doubt on the conclusory claims of plaintiff's declarants who posit that federal officers who wear face coverings or do not identify themselves as law

---

[3] *See* https://statecourtreport.org/our-work/analysis-opinion/can-states-ban-federal-officers-wearing-masks ("[L]awmakers in at least 30 other states have introduced, considered, voted on, or even passed similar legislation.") (last visited June 26, 2026); https://spectrumlocalnews.com/nys/central-ny/politics/2026/05/29/hochul-signs-measures-to-limit-ice-cooperation (describing New York state mask ban, "[t]he governor said she hopes the package is a model for other states.") (last visited June 26, 2026).

enforcement are safer or more effective at doing their jobs." Opp. at 13.[4] New York may disagree with the wisdom of the Federal Government's policy choice but that does not mean the State can impose New York's preferred policy on those officers. Indeed, federal law sets standards for immigration enforcement activities, including the discretion for officers to identify themselves as immigration officers as soon as it is practical and safe to do so when conducting an arrest. 8 C.F.R. § 287.8(c)(2)(iii). The Face Covering and Identification Acts take this discretion away from federal officers and agencies in reckless disregard for the safety of the officers and others. *See* Hargis Decl. ¶ 16, ECF No. 4-3, ("Allen Decl.") ¶ 20; ECF No. 4-4, ("Davis Decl.") ¶ 19. And "[a] state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law." *United States v. City of Arcata*, 629 F.3d 986, 991-92 (9th Cir. 2010).

4.      Defendants argue that "facial challenges necessarily fail when a statute may be validly applied in some scenarios." Opp at 12. But no application of laws that directly regulate the Federal Government has any lawful application to the Federal Government. "[I]t makes no difference that [the Challenged Acts] appl[y] not only to federal officers, but to local and state officers as well: '[t]he Supremacy Clause prohibits States from enacting a law that directly regulates federal operations even if the law regulates state operations in the same manner.'" *Philadelphia*, 2026 WL 1906075 at *10 (quoting *California*, 173 F.4th 1067).

New York also attempts to defend its imposition of criminal penalties on federal officers for noncompliance with the Face Covering and Identification Acts by arguing that federal officers

---

[4] Citing Decl. of Scott Shuchart, dated July 13, 2026, filed in *United States v. State of Conn.*, No. 26-cv-758 (D. Conn.) (ECF No. 31-6) (Shuchart Decl.). *But see Virginia*, 2026 WL 1909995 *7, describing a nearly identical Declaration from Mr. Shuchart submitted in that case: "the Court finds that Shuchart's reasoning and conclusions are ill-thought out, presented in conclusory fashion, and are not really documented. They are not helpful to the fact finding task of the Court or to understanding any issue in the case."

7

can remove state prosecutions to federal court and raise a Supremacy Clause immunity defense by demonstrating that their actions were necessary and proper to the discharge of their federal duties. Opp. at 11. The "necessary and proper" standard, from *New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004) (state prosecuting a federal officer for manslaughter, a generally applicable crime), does not apply here, where the law at issue "directly regulates inherently governmental conduct of federal officers carrying out their duties *under federal authority.*" *California*, 173 F. 4th at 1068 (emphasis in original). The Face Covering and Identification Acts cannot be enforced against the Federal Government because they violate intergovernmental immunity on their face, and no further inquiry is necessary. *See City of Arcata*, 629 F.3d at 991 ("We have relied on intergovernmental immunity in refusing to enforce state statutes against the federal government under circumstances far more ambiguous than those present here."). By New York's logic, states could criminalize any law enforcement practice employed by the Federal Government and place the burden on federal officers to justify why the federally authorized practice is necessary and proper. That is not the law, and New York's arguments to this end fail.

And Defendants' argument that its safety-related exceptions to federal compliance with its laws "are properly considered by courts on an as-applied basis in a proceeding seeking to enforce the challenged state law provision[]," misses the point. Opp. at 12. The potential for federal officers to be hauled into court to sort out the meaning and applicability of its vague exceptions is one of the reasons the Face Covering and Identification Acts regulate the Federal Government. At that point, "the damage is done." *Philadelphia*, 2026 WL 1906075 at *12 (quotation omitted).

**5.** New York claims its police powers allow it to circumvent the principles of intergovernmental immunity, Opp. at 14, but New York cannot regulate the Federal Government "in any manner and to any degree." *California*, 173 F.4th at 1068. New York is unable to cite

authority allowing it to regulate federal officers. Instead, it simply argues that it is justified by invoking its general police powers. Opp. at 14. But those powers do not permit every state in the nation to micromanage federal law enforcement. Tellingly, New York again provides no authority to support this extraordinary proposition. While New York is free to regulate its own law enforcement officers, it may not directly regulate federal officers because "[t]he Supremacy Clause prohibits States from enacting a law that directly regulates federal operations even if the law regulates state operations in the same manner." *California*, 173 F.4th at 1067 (citing *Johnson*, 254 U.S. at 56-57). New York's attempt at nullification thus fails.

> **B.      The Termination Act Violates Intergovernmental Immunity Principles**

Defendants argue that the Termination Act only regulates state and local authorities, not the Federal Government, and that it does not treat any similarly situated actors more favorably. Opp. at 17. Defendants also suggest that if New York is not permitted to discriminate against the Federal Government, that would raise Tenth Amendment concerns. *Id.* at 18. These arguments fail. "The Supremacy Clause 'prohibit[s] state laws that *either* regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals (*e.g.*, contractors)." *California*, 173 F.4th at 1066 (citation omitted).

1.      Defendants argue that the Termination Act only imposes prohibitions on "state and local authorities … and not any conduct on the part the federal government." Opp. at 17. That ignores the effect on the Federal Government. "It just so happens that [the Termination Act] has the exact same effect as a state law that bars the federal government from contracting for private immigration services." *CoreCivic*, 145 F.4th at 322 (rejecting State's argument that "a law regulates the federal government directly only if the law's text applies to it."). Because "[t]he [Termination Act] prevents the federal government from choosing how and through whom it will

9

carry out a core federal function," it "is in substance a direct regulation; it destroys the federal government's marketplace." *Id.* at 325-26 (3d Cir. 2025) (citation omitted). The Court should see the Termination Act "for what it really [i]s: not just a neutral regulation that affected the federal government but a prohibition on the Federal Government." *Id.* at 326 (citation and quotation omitted). All 287(g) agreements will be terminated, as will ICE's ability to enter agreements going forward. The Termination Act may as well have addressed itself to ICE specifically. By addressing itself to New York sheriffs and police departments, the result is the same.

**2.**      Defendants claim that the Termination Act "do[es] not treat any similarly-situated actors better than they treat federal actors" while admitting that Act is "focused on prohibiting state and local assistance for … enforcement of the federal immigration laws." Opp. at 17. That's precisely the problem—New York has targeted a uniquely federal function. Plaintiff does not need a comparator when New York's discrimination is facial and blatant. N.Y. Exec. Law § 170-k(2). The reason for comparing is to make sure there is actual discrimination via the comparison. *Washington*, 596 U.S. at 839. Where a uniquely federal function is under attack and explicitly named, demanding a comparator asks the wrong question. *United States v. King Cnty.,* 122 F.4th 740, 757 (9th Cir. 2024) (invalidating County order targeting "ICE charter flights … deporting immigration detainees," where "the only entity in the business, so to speak, of deporting immigration detainees, is the federal government.") By "burden[ing] federal operations, and only federal operations," the Termination Act discriminates against the Federal Government, regardless of comparators. *Id.* at 757–58.

Even so, comparators are easy to find. New York law allows municipalities to enter into various sorts of agreements with other entities within and outside of New York. *See, e.g.*, General Municipal Law §§ 119-n(c), 119-o; Compl. ¶ 116. And the Termination Act does not burden, let

alone terminate *any* other agreements that New York localities might have with *any* other entity. Only immigration enforcement is singled out for unfavorable treatment by the Termination Act.

3.      New York argues that invalidating the Termination Act "would imply that [it] cannot choose to discriminate against federal immigration authorities by refusing to assist their enforcement efforts" Opp. at 18 (citation omitted). That is common in discrimination law; entities can freely choose to contract with people but cannot do so discriminatorily. Regardless, New York is not refusing to "assist," it is actively terminating existing agreements that ICE has with over a dozen sheriffs and police departments in the State that would otherwise continue to exist but for the Termination Act. *See* ECF 4-6, ("Flanagan Decl.") ¶ 26. The sheriffs who have entered 287(g) agreements with ICE are free to exit those agreements consistent with the termination provisions they contain. But New York State cannot discriminatorily ban such agreements based on its policy disagreements with the Federal Government.

C.      **The Termination Act Violates the Contract Clause.[5]**

New York's stated purpose in passing the Termination Act was to "protect the rights of New Yorkers with respect to civil immigration enforcement by the federal government." SB S9005-C Part LL. But 287(g) agreements do not implicate the rights of New Yorkers, and New York's post hoc justification for the Termination Act—as a choice "not to participate in federal immigration enforcement,"—has no support in the text of the law itself. Opp. at 21. Because the text of the law does not reflect its alleged purpose, even if the purpose were taken to be legitimate,

---

[5] New York only disputes whether its impairment of the Federal Government's contracts is an "appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen v. Melin*, 584 U.S. 811, 819 (2018) (quotation and citation omitted); *see* Opp. at 21. New York does not dispute that the Termination Act "operate[s] as a substantial impairment of a contractual relationship." Opposition to Plaintiff's argument is therefore waived. *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 84 (S.D.N.Y. 2021). Regardless, the Termination Act is unlawful because the means used to achieve its end—termination of every 287(g) agreement within New York— are neither "appropriate" nor "reasonable." *Sveen*, 584 U.S. at 819.

the impairment is not "of a character appropriate to the public purpose." *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412 (1983); *Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 859-60 (8th Cir. 2002) (refusing to credit post-hoc articulation of legitimate public purpose that conflicted with the evidence). Even if it was supported by the text, impeding federal immigration enforcement is not a legitimate purpose. *See* ECF No. 4-1 at 18; 8 U.S.C. § 1357(g) (authorizing state officers to perform immigration functions).

New York's overbroad conception of "reasonable measures," Opp. at 21, would allow it to vitiate any contract entered by localities in the State. Instead, because the states have a self-interest in using their laws to terminate their own contracts, "when a State is a contracting party, its 'legislative judgment is subject to stricter scrutiny than when the legislation affects only private contracts.'" *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 212 (3d Cir. 2016).

### D.    The Termination Act is Obstacle Preempted

Defendants contend that the Termination Act merely reflects New York's lawful choice not to assist in federal immigration enforcement and because federal law "acknowledges that states may pass laws prohibiting [287(g)] agreements." Opp. at 19. But "states do not retain ... an untrammeled right to forbid all voluntary cooperation by state or local officials with particular federal programs." *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999).

New York may not "turn the Tenth Amendment's shield … into a sword allowing states and localities to engage in passive resistance that frustrates federal programs." *Id.* New York is not authorized to nullify a federal program 287(g) agreements being voluntary. Doing so impedes the Federal Government's ability to deputize willing participants. State measures are preempted when they frustrate federal statutory objectives or undermine the operation of a federal scheme. *Crosby v Nat'l Foreign Trade Council*, 530 U.S. 363, 366, 373-74 (2000).

12

And Defendants misread federal law which does not "acknowledge[] that states may pass laws prohibiting [287(g)] agreements." Opp. at 19. Defendants misread the "to the extent consistent with State … law," 8 U.S.C. § 1357(g)(1), phrase as a grant of authority to States to short circuit a federal program rendering Section 1357(g) ineffective. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012) ("The presumption against ineffectiveness ensures that a text's manifest purpose is furthered, not hindered.").

Additionally, 287(g) agreements deputize local law enforcement to "become de facto immigration officers[.]" *City of El Cenizo v. Texas*, 890 F.3d 164, 180 (5th Cir. 2018). Local officers "shall be considered to be acting under color of Federal authority for purposes of determining the liability, and immunity from suit … in a civil action … under Federal or State law." 8 U.S.C. § 1357(g)(8); *see, e.g.*, ECF 4-7 at 4 (treating local law enforcement officers as federal employees for tort and worker's compensation claims when performing a function on behalf of ICE). States cannot nullify this liability shield conferred by extent 287(g) agreements.

New York claims that it "can direct how municipalities exercise their police powers[,]" Opp. at 20, but New York State is not a party to any 287(g) agreements, local sheriffs are. Sheriffs have significant levels of independence from state control. *See, e.g.*, N.Y. Const. art. XIII, § 13(a) (establishing procedures for election and conferring removal protections for sheriffs). New York offers no justification for its position that it can unilaterally override the will of elected officials to enter 287(g) agreements authorized by Congress. The Termination Act erects an obstacle to the performance of the agreement between ICE and the sheriffs who have entered these agreements.

## II.  The United States Faces Irreparable Harm Absent Preliminary Relief

Because Plaintiff has demonstrated a likelihood of success on its claim that the Challenged Acts are invalid under the Supremacy Clause and Contract Clause, irreparable harm exists. *See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 366-67 (1989);

13

*Conn. State Police Union v. Rovella*, 494 F. Supp. 3d 210, 220 (D. Conn. 2020), *aff'd*, 36 F.4th 54 (2d Cir. 2022). A violation of the Constitution necessarily results in irreparable injury to the United States. *See* PI Memo. at 20-24; *California*, 173 F.4th at 1069; *Virginia*, 2026 WL 1909995 *12; *Philadelphia*, 2026 WL 1906075 *12.

The Face Covering and Identification Acts independently harm the Federal Government by stripping federal officers and agency discretion to use facial coverings and identification. They are faced with two choices: comply with the State laws and place themselves and operations at risk while executing federal duties or face criminal prosecution. Allen Decl. ¶ 21; Davis Decl. ¶¶ 14, 17, 19, 20; Hargis Decl. ¶¶ 15, 16, 18; Flanagan Decl. ¶ 18. That chilling effect is well attested, *id.*, and the fact that federal officers choose to maintain officer safety or operational integrity by masking over the threat of criminal enforcement by New York in no way "undermine[s]" the claim that federal officers conduct will be chilled by threat of criminal enforcement. Opp. at 22. And federal officers most certainly do have a "constitutional right," Opp. at 23, to be free from frivolous state criminal prosecutions that violate the Supremacy Clause like the challenged acts.

New York claims that there are no "current[] impact[s]" to the United States. Opp. at 22. But the United States need not wait until its officers are prosecuted to seek a preliminary injunction. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute").

Defendants cavil that the only harm stemming from the Termination Act is the expenditure of resources. Opp. at 23. Not so. In addition to causing a sovereign injury, the Act also impedes federal operations by terminating 287(g) agreements and upends reliance interests predicated on local cooperation vital to ICE's mission. Flanagan Decl. ¶¶ 20, 34. The Termination Act therefore

14

threatens to "destroy the federal function" of federal law enforcement in the State of New York, *United States v. Fresno Cnty.*, 429 U.S. 452, 463 n.11, 464 (1977), resulting in irreparable harm.

### III. The Balance of Equities and the Public Interest Weigh in the United States' Favor

The balance of the equities favors the United States' because, as this Court has said, "a state is 'in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional.'" *Millennium Pipeline Co., L.L.C. v. Seggos*, 288 F. Supp. 3d 530, 545 (N.D.N.Y. 2017) (D'Agostino, J.) (internal quotation omitted); *see also California*, 173 F.4th at 1069 ("[a] plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in [its] favor.") (citation omitted). Moreover, New York has no legitimate interest in interfering with the enforcement of federal law or putting federal officers at risk.

New York offers policy justifications for the Challenged Acts. None persuades. For example, New York claims that the Challenged Acts were passed to "protect public safety[.]" Opp. at 24. But releasing illegal alien criminals into New York's communities can only have the opposite effect. Compl. ¶¶ 53, 55; PI Memo. at 11. And New York is not made safer when federal immigration enforcement efforts are regulated by State laws that impinge the discretion of federal officers and agencies. The Face Covering and Identification Acts create safety threats to federal officers and their families, and to the public at large by interfering with the enforcement of federal law. *See generally* Hargis Decl. There can also be no public interest in placing federal, state, and local law enforcement at odds with one another. Enforcement could lead to dangerous confrontations between officers.

### CONCLUSION

For the foregoing reasons, the Court should grant the United States' Motion for Preliminary Injunction.

15

Dated: July 20, 2026                    Respectfully Submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division

                                        SEAN SKEDZIELEWSKI
                                        Counsel to the Assistant Attorney General
                                        Civil Division

                                        By:

                                        /s/ *Brandon D. Neuman*
                                        BRANDON D. NEUMAN

                                        Trial Attorney
                                        U.S. Department of Justice
                                        Civil Division
                                        Enforcement & Affirmative Litigation Branch
                                        P.O. Box 386
                                        Washington, DC 20044-0386
                                        Tel: (202) 227-7416
                                        Email: brandon.neuman@usdoj.gov

                                        Attorney for Plaintiff United States of America

16