UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF NEW YORK, et al.,

Defendants.

---

No. 26-cv-1360 (MAD) (ML)

Honorable Mae D'Agostino
United States District Judge

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

## TABLE OF CONTENTS

INTRODUCTION .......... 5

BACKGROUND .......... 6

I. Federal Law Enforcement .......... 6

II. The Challenged New York Laws .......... 8

III. Procedural History .......... 9

LEGAL STANDARD .......... 9

ARGUMENT .......... 10

I. The Face Covering Act Directly Regulates the Federal Government. .......... 11

II. The Identification Act Directly Regulates the Federal Government. .......... 14

III. The United States is Entitled to a Permanent Injunction. .......... 16

CONCLUSION .......... 19

## TABLE OF AUTHORITIES

### Cases

*Alpha Cap. Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 341 (S.D.N.Y. 2020) ........................ 9

*Am. Fin. Servs. Assn. v. Burke*, 169 F. Supp. 2d 62 (D. Conn. 2001) ........................................ 14

*Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) .......................... 12

*Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012)................................................... 5

*CONMED Corp. v. Fed. Ins. Co.*, 590 F. Supp. 3d 463 (N.D.N.Y. 2022) .................................... 6

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)......................................................... 12

*Glidedowan, LLC v. NY State Dep't of Health*, 768 F. Supp. 3d 503 (W.D.N.Y. 2025) ............ 14

*Hancock v. Train*, 426 U.S. 167, 179-80 (1976)............................................................................. 6

*Hester ex rel. A.H. v. French*, 985 F.3d 165 (2d Cir. 2021) ....................................................... 14

*Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 573 (S.D.N.Y. 2011) ................................ 5

*Johnson v. Maryland*, 254 U.S. 51, 57 (1920)................................................................................. 8

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)........................................ 6

*Mayo v. United States*, 319 U.S. 441 (1943) ............................................................................. 1, 8

*McCulloch v. Maryland*, 17 U.S. 316 (1819) .................................................................................. 1

*New Hope Fam. Servs., Inc. v. Poole*, 626 F. Supp. 3d 575 (N.D.N.Y. 2022)............................ 15

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)............. 12

*New York v. United States*, 505 U.S. 144 (1992)............................................................................ 9

*Nken v. Holder*, 556 U.S. 418, 435 (2009) ................................................................................... 12

*NY Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013)............................................. 15

*Tennessee v. Davis*, 100 U.S. 257 (1879) ....................................................................................... 3

*United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012)......................................................... 14

*United States v. California*, 173 F.4th 1060 (9th Cir. 2026) ................................................ passim

*United States v. California*, No. 26-926, 2026 WL 3071018 (9th Cir. Oct. 14, 2026).......... passim

*United States v. City of Arcata*, 629 F.3d 986 (9th Cir. 2010)............................................... 6, 8, 9

*United States v. City of Philadelphia*, 838 F. Supp. 3d 436 (E.D. Pa. 2026) ................................ 7

*United States v. New York*, No. 26-CV-1360 (MAD/ML), 2026 WL 2225423, at *24 (N.D.N.Y Aug. 3, 2026) .................................................................................................... passim

**Statutes**

28 U.S.C. § 509 ........ 3

28 U.S.C. § 531 ........ 3

29 U.S.C. § 668 ........ 3

5 U.S.C. § 301 ........ 3

5 U.S.C. § 5901 ........ 3

6 U.S.C. § 211 ........ 3

6 U.S.C. § 252 ........ 3

8 U.S.C. § 1103(a)(2) ........ 3

N.Y. Civ. Rights Law § 100 ........ 5, 7, 11, 16

N.Y. Civ. Rights Law § 101 ........ passim

N.Y. Civ. Rights Law § 102 ........ passim

N.Y. Penal Law § 70.15 ........ 4

**Other Authorities**

2026 N.Y. Sess. Law ch. 55, S. 9005-C, pt. LL, subp. F (McKinney) ........ 4

Reorganization Plan No. 2 of 1973, 87 Stat. 1091, 1092, as amended Pub. L. 93–253, §1, 88 Stat. 50 (1974) ........ 3

## INTRODUCTION

For more than two hundred years, the law has been clear that States have no power to "in any manner control[] the operations of" the Federal Government. *McCulloch v. Maryland*, 17 U.S. 316, 436 (1819); *see Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal Government are free from regulation by any state."); Complaint, Dkt. No. 1 ("Compl.") ¶ 6. The intergovernmental immunity doctrine incorporates that principle, and "forbids States from regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree." *United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026) ("*California I*"). There is no room for intrusion by the individual states.

Nevertheless, New York has attempted to control how federal law enforcement officers perform their duties and interact with the public by enacting new laws. Specifically, N.Y. Civ. Rights Law ("N.Y.C.R.") § 101 (the "Face Covering Act") regulates when or how federal law enforcement officers may use facial coverings, and N.Y.C.R. § 102 (the "Identification Act") controls when and how federal law enforcement officers must wear identification (collectively, the "Challenged Acts"). It is the Executive's role, however, to provide for and determine federal law enforcement officers' uniforms and equipment when carrying out their official duties. *See, e.g.*, 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees).

This Court preliminary enjoined the Challenged Acts, relying upon the sound reasoning of *California I*, 173 F.4th at 1063. Subsequently, the Ninth Circuit held that the Federal Government was "certain to succeed" on the merits of such claims. *United States v. California*, No. 26-926,

2026 WL 3071018 at *2, *5 (9th Cir. Oct. 14, 2026) ("*California II*"). Because nothing materially has changed since this Court's preliminary injunction ruling and the pleadings establish the constitutional violation, the Court should enter judgment in the United States' favor under Rule 12(c) of the Federal Rules of Civil Procedure.

The only appropriate remedy here is a permanent injunction. New York's constitutional violations and consequent injuries to federal sovereignty caused by the Challenged Acts constitute irreparable harm to the United States. *United States v. New York*, No. 1:26-CV-1360 (MAD/ML), 2026 WL 2225423, at *24 (N.D.N.Y. Aug. 3, 2026). Further, federal officers risk criminal prosecution for noncompliance with the Challenged Acts. The balance of equities and public interests, which merge here, also favor entry of a permanent injunction because Defendants have no legitimate interest in their unconstitutional Acts, and the public interest lies in adherence to the constitutional principles underlying our dual sovereignty. Accordingly, the Court should grant this motion, enter judgment in the Federal Government's favor, and permanently enjoin the Challenged Acts.

## BACKGROUND

### I. Federal Law Enforcement

"The Federal Government, not the state of New York, has the authority to control its own agents and activities." Compl. ¶ 5, *citing California I*, 173 F.4th at 1063. *cf.* Answer, Dkt. No. 58 ("Ans.") ¶ 5 (referring "the Court to the materials cited there for a complete and accurate statement of their contents").[1] The President has a constitutional duty to "take Care that the Laws be

[1] The Answer frequently states the Complaint paragraphs are "characterizations, arguments, and/or legal conclusions," or the Answer refers the Court to the text of the underlying law. *E.g. compare* Compl. ¶¶ 2, 5, 6, 23, 31, 66-74, 90-92, 111, 134-39 *with* Ans. ¶¶ 2, 5, 6, 23, 31, 66-74, 90-92, 111, 134-39. Defendants admit that the laws were passed and signed, Ans. ¶ 3, 66, and refer the Court to the content of the law. Ans. ¶ 4. The Answer therefore demonstrates the underlying issues

faithfully executed." U.S. Const. art. II § 3. The authority to discharge that duty "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). Federal law enforcement agencies, including those within the Departments of Justice ("DOJ") and Homeland Security ("DHS"), are created by federal law. *See, e.g.*, 28 U.S.C. § 531 (Federal Bureau of Investigation ("FBI")), 6 U.S.C. § 252 (U.S. Immigration and Customs Enforcement ("ICE")); *id.* § 211 (U.S. Customs and Border Protection ("CBP")); Reorganization Plan No. 2 of 1973, 87 Stat. 1091, 1092, as amended Pub. L. 93–253, § 1, 88 Stat. 50 (1974) (Drug Enforcement Administration ("DEA")).

To achieve their respective goals, the heads of each agency have the power to govern the agency's affairs and direct their agents' activities. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of the DOJ in the Attorney General); 8 U.S.C. § 1103(a)(2) (authorizing the Secretary of Homeland Security to "control, direct[], and supervis[e]" all DHS employees). Included within the agencies' power is the authority to determine how agents must conduct themselves when engaged in their official duties in accordance with federal law. Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment when carrying out their official duties. *See, e.g.*, *id.*; 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational

---

are matters of law for the Court to resolve because the "material facts are undisputed." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees).

## II. The Challenged New York Laws

New York Governor Kathy Hochul signed SB9005-C into law on May 27, 2026, which amended N.Y.C.R. to add sections 100-02, respectively, a definitions section (Section 100), a Face Covering Act (Section 101), and an Identification Act (Section 102). *See* Compl. ¶ 66; Ans. ¶ 66; 2026 N.Y. Sess. Law ch. 55, S. 9005-C, pt. LL, subp. F § 3 (McKinney).

The Face Covering Act purports to prevent law enforcement officers, including federal officers from ICE, CBP, the FBI and the DEA, from "wear[ing] any face covering that conceals, disguises, or obscures their facial identity while interacting with the public in the performance of their duties." N.Y.C.R. § 101(1); Compl. ¶ 67. "Face covering" includes "any item that is used to conceal, disguise, or obscure the facial identity, including any opaque mask, garment, helmet, headgear, balaclava, ski mask, neck gaiter, or tactical mask." N.Y.C.R. § 100(1); Compl. ¶ 68. While "face covering" has exceptions (*e.g.*, religious headgear or coverings worn for occupational health reasons), those exclusions do not cover items commonly used by federal officers. N.Y.C.R. § 100(1). Further, the State of New York, not the Federal Government, retains the sole discretion to decide whether and when these exceptions apply. *Id.*; Compl. ¶ 68.

The Identification Act similarly imposes restrictions on "uniformed law enforcement officer[s]," including federal officers, by demanding that they "visibly display . . . the name of the agency or department employing such officer; and . . . at least one form of identification of the officer, such as the officer's name, badge number, or shield number." N.Y.C.R. § 102(1); Compl. ¶ 70. Law enforcement officers who are not in uniform "while interacting with members of the public in performance of their duties," including federal officers, must "wear at least one visibly identifying agency-issued or department-issued logo, patch, emblem, insignia, or other external

identifier clearly identifying such officer as a law enforcement officer within such agency or department acting under color of law." *Id.* § 102(2). These requirements do not apply to "active undercover operations, covert surveillance," or "other investigative activities where identification would compromise such investigation." *Id.* § 102(3)(a); Compl. ¶ 71.

First offenses of either the Face Covering or Identification Act are punishable by up to fifteen days in jail, and any subsequent offense is deemed a misdemeanor, punishable by up to one year in jail. *See* N.Y.C.R. §§ 101(2), 102(5); N.Y. Penal Law § 70.15; Compl. ¶ 73.

Both the Face Covering and Identification Acts were scheduled to take effect on June 26, 2026. *See id.* ¶ 66; Ans. ¶ 66.

### III. Procedural History

Plaintiff brought this action challenging the Face Covering Act and Identification Act as unconstitutional direct regulation of the Federal Government on June 22, 2026, and the next day moved for a preliminary injunction, before the Acts took effect.[2] Following oral argument, this Court entered a preliminary injunction on August 3, 2026, that blocked enforcement of the Challenged Acts. *New York*, 2026 WL 2225423 at *25.

## LEGAL STANDARD

Judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate when, "drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that the moving party is entitled to judgment as a matter of law." *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 573 (S.D.N.Y. 2011), *aff'd sub nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012). In deciding the motion, "the court considers the complaint, the answer, any

[2] Defendants inexplicably assert a laches affirmative defense in their Answer. *Id.* ¶ 156. That defense fails given how expeditiously the Federal Government sought relief in court. *See Bakken v. United States Military Academy*, 833 F. Supp. 3d 460, 517-18 (S.D.N.Y. 2026).

written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotation omitted). "[I]f a defendant's Answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted." *CONMED Corp. v. Fed. Ins. Co.*, 590 F. Supp. 3d 463, 469 (N.D.N.Y. 2022) (D'Agostino, J.).

**ARGUMENT**

Direct regulation of the Federal Government by states is prohibited by the intergovernmental immunity doctrine, because states cannot control how the Federal Government "conducts specifically governmental functions." *California II*, 2026 WL 3071018 at *5. This means that there is no exception to intergovernmental immunity—even *de minimis*—so "[a] state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law." *United States v. City of Arcata*, 629 F.3d 986, 991-92 (9th Cir. 2010).

Fundamentally, "if a state law directly regulates the governmental conduct of the United States without congressional authorization, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with such functions or operations." *California II*, 2026 WL 3071018, at *6. Thus, states cannot require a federal Post Office employee to obtain a driver's license from the state, *Johnson v. Maryland*, 254 U.S. 51, 57 (1920); forbid federal facilities from operating without a state pollution permit, *Hancock v. Train*, 426 U.S. 167, 179-80 (1976); or prohibit federal military recruiters from recruiting minors, *City of Arcata*, 629 F.3d at 991-92. As relevant here, when a state creates a law that "applies exclusively to law enforcement agencies and their officers, including federal law enforcement agencies and federal law enforcement officers," that law

"directly regulates conduct reserved to sovereigns" and is impermissible under the Supremacy Clause. *New York*, 2026 WL 2225423, at *6; *see CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315, 321 (3d Cir. 2025).

**I. The Face Covering Act Directly Regulates the Federal Government.**

The Face Covering Act is invalid because it purports to regulate the Federal Government directly by defining "federal law enforcement officer" to specifically include FBI, DEA, ICE, and CBP officers and agents, and by applying to them the Act's provisions relating to facial coverings. N.Y.C.R. §§ 100(2)(c), 101(citing N.Y. Crim. P. Law § 2.15); *see* Compl. ¶ 67; Ans. ¶ 67 (referring the Court to the text of the statute). Courts across the United States have held similar mask bans by states or local governments violate the Supremacy Clause. *See, e.g., United States v. Virginia*, No. 26-CV-0545, 2026 WL 2411521, at *10 (E.D. Va. Aug. 18, 2026) (observing that Virginia's "Mask/Identity Law require[d] that federal law enforcement officers satisfy additional requirements placed on them by Virginia - identification requirements, and masking requirements - which [were] not required under federal law, and which the federal authorities specifically [said] they need not meet. That offend[ed] the principle of intergovernmental immunity that foreclose[d] application of the [Virginia] State law"); *United States v. City of Philadelphia*, 838 F. Supp. 3d 436, 450 (E.D. Pa. 2026) (quoting *California I*, 173 F.4th at 1067) ("By their express terms, each provision impermissibly [sought] to 'impose[ ] conditions upon 'a function of government,' and regulate[ ] 'the right to carry on the business' of the federal government. This type of direct regulation of the federal government by a municipality [was] blatantly impermissible"); *California I*, 173 F.4th at 1067 (concluding that California's mask ban "purport[ed] to override the federal government's power to determine whether, how, and when to publicly identify its officers, . . . [a]nd in so doing, it aim[ed] to regulate the manner and conditions under which federal agents

can enforce federal law”). In reliance on *California I*, this Court preliminarily enjoined New York’s Face Covering Act.

At the preliminary injunction stage, this Court correctly held that the Face Covering Act “attempt[s] to regulate the conduct of federal officers and agents *in furtherance* of their enforcement of federal law” and “‘in the performance of their duties.’” *New York*, 2026 WL 2225423, at *12 (citing *Texas v. Dep’t of Homeland Sec.*, 123 F.4th 186, 207 (5th Cir. 2025); N.Y.C.R. §§ 101(a), 102(1)) (emphasis in original). The Court further noted that the Face Covering Act “do[es] not regulate conduct that applies to any ordinary citizen, such as ‘the mode of turning at the corners of streets[,]’” instead, the Act applies “to law enforcement officers, including federal agents, in the performance of their official duties.” *Id.* at *11 (citing *Johnson*, 254 U.S. at 56-57; *California I*, 173 F.4th at 1068). Indeed, the Court found, the Face Covering Act is “expressly intended” to “regulate the federal government” by “constrain[ing] the conduct of federal law enforcement officers and agents.” *Id.* (quoting *Arcata*, 629 F.3d at 991).

But such action at the state level is not allowed. The “activities of the Federal Government are shielded by the Supremacy Clause from direct state regulation unless Congress provides clear and unambiguous authorization for such regulation.” *Id.* at *6 (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988); *Mayo*, 319 U.S. at 445) (internal quotation marks omitted). As this Court put it, “state laws which expressly attempt to constrain the activities of federal agents in the course of their duties run afoul of the intergovernmental immunity doctrine.” *Id.* at *11 (citing *Arcata*, 629 F.3d at 991).

The Court was unpersuaded by New York’s attempt to downplay the practical effect of the Face Covering Act because “the scope to which federal functions are impeded is not dispositive in a direct regulation analysis.” *Id.* In other words, “[t]he extent of the intrusion did not matter; simply

'constraining the conduct of federal agents and employees' was direct regulation because the Federal Government can 'act only through its officers and agents.'" *Id.* (quoting *Arcata*, 629 F.3d at 991-92). The Face Covering Act does not incidentally affect how agents do their jobs, it "expressly attempt[s] to regulate the conduct of federal law enforcement officers 'in the performance of their duties,'" *Id.* at *12 (citations omitted).

This Court also rejected New York's invocation of its police powers, which the Court regarded as "beside the point" because "[t]he Supreme Court has clearly held that '[t]he United States may perform its functions without conforming to the police regulations of a state.'" *Id.* at *14 (quoting *Arizona v. California*, 283 U.S. at 451 (citations omitted)); *id.* at *15 (recognizing that "police powers may still violate the intergovernmental immunity doctrine if the law at issue regulates these federal functions of law enforcement directly"). Fundamentally, this Court concluded, "New York cannot impose its own uniform requirements on federal agents simply because it disagrees with how the Federal Government is exercising its authority." *Id.* (citing *New York v. United States*, 505 U.S. 144, 156 (1992)). The Face Covering Act "take[s] direct aim at regulating the federal agents in their function of enforcing federal law," and therefore violates the intergovernmental immunity doctrine. *Id.* at *16.

There is no reason for this Court in the context here—a motion for judgment on the pleadings—to depart from its sound preliminary-injunction reasoning. *Cf Alpha Cap. Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 341 (S.D.N.Y. 2020) (granting summary judgment in part after previously entering a preliminary injunction because "nothing has materially changed [regarding a key factual issue], and Alpha has not submitted any evidence to the contrary."). Nothing has materially changed since the Court' prior ruling, and Defendants do not dispute the material facts. *See* Ans. ¶¶ 69, 73.

As evident from the pleadings, the Face Covering Act prohibits federal law enforcement officers from "wear[ing] any face covering that conceals, disguises, or obscures their facial identity while interacting with the public in the performance of their duties." N.Y.C.R.§ 101(1); Compl. ¶¶ 4-6, 111. Face coverings include "any item that is used to conceal, disguise, or obscure the facial identity, including any opaque mask, garment, helmet, headgear, balaclava, ski mask, neck gaiter, or tactical mask." N.Y.C.R. § 100(1). Some limited exceptions apply, such as a "transparent face shield," medical masks including N95s "worn to prevent the transmission of diseases or illnesses," masks to protect against "gas, smoke, or other hazard[s]," water-rescue masks, motorcycle helmets, facial hair, sunglasses, religious garments, protective eyewear, and disguises "for the purposes of active undercover operations." *Id.* § 100(1)(a)-(m). However, those exceptions fail to define the terms used and do not establish who determines when the exceptions apply, leaving federal law enforcement vulnerable to criminal charges. *Id.* § 101(2). Defendants do not deny the law has that legal penalty and, instead, merely point the Court to the text of the law which plainly purports to regulate the Federal Government. *See* Ans. ¶¶ 69, 73.

As in *California I & II*, which this Court previously found persuasive, the United States here is "certain to succeed" on its similar claim, *California II,* 2026 WL3071018 at *2, and is entitled to judgment.

**II. The Identification Act Directly Regulates the Federal Government.**

The Identification Act, like the Face Covering Act, is invalid because it purports to regulate the Federal Government by requiring federal law enforcement officers to display certain visible identification. N.Y.C.R. § 102(1)-(2). *See* Compl. ¶ 70; Ans. ¶ 70 (referring the Court to the text of the statute). At the preliminary injunction stage, this Court applied the same sound reasoning to enjoin the Identification Act as it did the Face Covering Act. *See New York*, 2026 WL 2225423, at *5–16 (analyzing the Face Covering and Identification Acts together). The Court held that the

Identification Act "attempt[s] to regulate the conduct of federal officers and agents *in furtherance* of their enforcement of federal law." *Id.* at *12 (quotations omitted). "State laws which expressly attempt to constrain the activities of federal agents in the course of their duties run afoul of the intergovernmental immunity doctrine." *Id.* at *11. Accordingly, this Court joined the other courts that have reviewed the same issue and preliminarily enjoined enforcement of the Identification Act. *Id.* at *25. As with the Face Covering Act, nothing has materially changed since then to justify departing from that ruling or to prevent entry of final judgment in the Federal Government's favor. *See Alpha Cap. Anstalt*, 432 F. Supp. 3d at 341.

The Identification Act applies to "any federal law enforcement officer," which includes FBI, DEA, ICE, and CBP officers and agents. N.Y.C.R. § 100(2)(c) (incorporating by reference N.Y. Crim. Proc. Law § 2.15). Specifically, the Identification Act requires federal law enforcement officers to display identification markers according to specific requirements, regardless of whether the officer is in uniform or not in uniform, whenever the officer interacts "with the public in the performance of their duties." *Id.* § 102(1)-(2); Compl. ¶¶ 4-6, 111. Some exceptions and conditions apply depending on whether or not the officer is uniformed, or whether the officer is "engaged in active undercover operations, covert surveillance, other investigative activities," or using "personal protective equipment required for medical or emergency response purposes." N.Y.C.R. § 102(2)-(3). Absent an exception, officers must "visibly display" identification by "wear[ing] externally on the uniform in a size and location that is reasonably visible to members of the public with whom the officer interacts." *Id.* § 102(4). The exceptions are ill defined and do not indicate who determines when they apply, but in any event, the exceptions are irrelevant because any direct regulation of the federal government is unconstitutional. *California II*, 2026 WL 3071018 at *5-7. Still, as written, the law contains penalties that can be enforced, leaving federal law enforcement

vulnerable to criminal charges. Defendants do not deny the law has that legal penalty, and instead, refer to the text of the law. *See* Ans. ¶¶ 69, 73.

As in *California I & II*, the United States here is "certain to succeed" on its similar claim, as review of the Complaint and Answer demonstrates that the Identification Act unconstitutionally regulates the Federal Government, and therefore the United States is entitled to judgment in its favor.

**III. The United States is Entitled to a Permanent Injunction.**

Because the pleadings demonstrate that the Challenged Acts improperly regulate the Federal Government, the Court should permanently enjoin them. To establish entitlement to a permanent injunction, a plaintiff must show the traditional injunction factors: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The balance of harms and public interest factors "merge when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the injunction factors are easily met.

*First*, the United States has suffered irreparable injury and there is no adequate remedy at law. "Irreparable harm exists 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'" *New York*, 2026 WL 2225423, at *23 (citing *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (internal citations omitted)). Here, irreparable harm necessarily results from the enforcement of a state law that violates the Supremacy Clause.

*Id.* at *23; *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 366-67 (1989) (noting that irreparable injury may be established "by a showing that the challenged state statute is 'flagrantly and patently violative of . . . the express constitutional prohibitions,'" such as by "prescription of the Supremacy Clause" (citation omitted)); *California I*, 173 F.4th at 1069 (finding "irreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity").

The Challenged Acts regulate the activities of federal law enforcement in the course of their official duties. N.Y.C.R. §§ 101-02. "[N]othing in the Constitution," however, "mentions, or conceives of, a role for the States in implementing or enforcing federal immigration law." *Virginia*, 2026 WL 2411521, at *8. And, "Congress exercised its power to make laws governing the entry, presence, status, and removal of aliens" by enacting the Immigration and Nationality Act, and "provid[ed] Executive agencies the authority to inspect, investigate, arrest, detain, and remove persons suspected of being, or found to be, unlawfully in the United States." *New York*, 2026 WL 2225423, at *14. (citing 8 U.S.C. §§ 1182, 1225-28, 1231). Further, "settled law establishes that federal, not state, authorities make the policies that animate the enforcement of federal immigration laws." *Id.* at *11.

Here, the United States' irreparable injury stems both from the constitutional violation and the sovereign injuries that result from New York's Challenged Acts and their attempted control of federal law enforcement. *Id.* at *23. While Defendants raise as an affirmative defense or claim that the United States' "injuries were caused by the intervening acts of others, including Plaintiff," that claim fails. Ans. ¶ 157. Defendants admitted the Challenged Acts were passed and signed into law. *Compare* Compl. ¶¶ 3, 66, 74 *with* Ans. ¶¶ 3, 66, 74. The Challenged Acts apply to federal law enforcement officers, and Defendants point the Court to the text of the law. *Compare* Compl. ¶¶

4, 6, 67, 70 *with* Ans. ¶¶ 4, 6. 67, 70. By attempting to regulate federal law enforcement, the Challenged Acts violate intergovernmental immunity and cause sovereign injury. Compl. ¶¶ 2, 5-6, 66-74, 90-91, 110-11, 134-39; *see also New York*, 2026 WL 2225423, at *16, *California I*, 173 F.4th at 1067-68, *California II*, 2026 WL 3071018 at *2, *5. Therefore, because the Challenged Acts violate intergovernmental immunity under the Supremacy Clause, Defendants alone are responsible for the injury to the United States.

This Court already found the Challenged Acts violate federal sovereignty. *New York*, 2026 WL 2225423, at *23. States "cannot 'exclude [the Federal Government] from the exercise of any authority conferred upon it by the Constitution, obstruct its authorized officers against its will, or withhold from it, for a moment, the cognizance of any subject which that instrument has committed to it.'" *Id.* at *14 (quoting *Davis*, 100 U.S. at 263). Such effects attend the Challenged Acts, and thereby the United States is irreparably harmed. *Id.* at *23-24 (finding irreparable injury to the United States and likelihood of success on the merits); Compl. ¶¶ 4-6, 23, 90, 109, 134-39.

*Second*, the balance of hardships and public interest tip decidedly in favor of the United States. Compl. ¶ 108, 134-39. The public has a strong interest in maintaining our system of federalism and the constitutional lines drawn between federal and state power, as that is the very bedrock of our system of law and our nation. Compl. ¶ 108; *compare to* Ans. ¶ 108. The merged factors of the balance of equities and the public interest likewise favor the United States, because there can be no public interest in enforcing an unconstitutional law or violating the Supremacy Clause. *California I*, 173 F.4th at 1069 ("[A]ll citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights."); Compl. ¶¶ 6, 108-09, 134-39; *see also Hester ex rel. A.H. v. French*, 985 F.3d 165, 184 (2d Cir. 2021) ("the public interest is well served by the correction of this constitutional harm").

Additionally, there is also significant public interest in protecting federal officers' safety, removing unlawful impediments to federal law enforcement operations, and avoiding potential conflict between state and federal agents. Indeed, "[f]rustration of federal statutes and prerogatives are not in the public interest." *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012); *see Am. Fin. Servs. Assn. v. Burke*, 169 F. Supp. 2d 62, 71 (D. Conn. 2001); *Glidedowan, LLC v. NY State Dep't of Health*, 768 F. Supp. 3d 503, 525 (W.D.N.Y. 2025) ("public interest considerations associated with the performance of government functions possess a high value when balancing the equities.").

The public interest is served by protecting federal officers' safety and removing unlawful impediments to federal law enforcement as posed by the Challenged Acts' ban on facial coverings and requirements to display affiliation and identification. New York is also undermining the public interests by setting up a conflict between federal and state officers; on the one hand, the Federal Government will not comply with Defendants' improper attempts to regulate the Federal Government, and on the other, state and local officers intend to enforce the Challenged Acts against federal officers. Compl. ¶ 89.

Accordingly, a permanent injunction would serve the public interest. Therefore, the balance of equities and the public interest support a permanent injunction. *See New Hope Fam. Servs., Inc. v. Poole*, 626 F. Supp. 3d 575, 585 (N.D.N.Y. 2022) (D'Agostino, J.) (quoting *NY Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)) (granting permanent injunction because the State of New York does "'not have an interest in the enforcement of an unconstitutional law'"). This Court should permanently enjoin the Challenged Acts.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court enter judgment on Count I in favor of the United States, deny Defendants' affirmative defenses, and

permanently enjoin Defendants, their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with any of the Defendants, from enforcing N.Y.C.R. §§ 100-02 against the Federal Government.

DATE: November 6, 2026

Respectfully Submitted,

JOHN A. SARCONE III
First Assistant United States Attorney
Northern District of New York

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CODY M. POPLIN
Deputy Assistant Attorney General

HILARY K. PERKINS
Director

JACQUELINE COLEMAN SNEAD
Deputy Director

/s/ *Brandon D. Neuman*
BRANDON D. NEUMAN (CA Bar #319067)
LUKE A. MILLER (MN Bar #0504247)
Trial Attorneys
Enforcement & Affirmative Litigation Branch
U.S. Department of Justice
450 Fifth Street, N.W.
Washington, D.C. 20001
(202) 227-7416
Brandon.Neuman@usdoj.gov
Luke.Miller2@usdoj.gov

*Attorneys for the United States of America*